Luis Sanquírico, Petitioner and Appellant, v. Board of Directors of the Savings and Loan Fund Association etc., Respondent and Appellee.

No. 7434.   Argued February 15, 1938.—Decided March 11, 1938.

E. H. F. Dottin for appellant.   C. H. Juliá for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

On the 24th of September, 1935, Luis Sanquírico filed a petition in the District Court of San Juan, for a writ of

mandamus against the "Board of Directors of the Savings and Loan Fund Association of the Employees of the Insular Government of Puerto Rico." He alleged therein, and subsequently proved, that he had been an employee of the Insular Government for over 27 years until February, 1931, he retired; that at that moment he was a member in good standing of the above Association, which had been created by Act No. 52 of 1921 (Laws, p. 374) and was also insured under the same act, that he notified the Association at the time of his retirement that he wished to continue enjoying the privileges of the insurance and duly obtained the return of the savings he had accumulated throughout his years of employment; that on August 8, 1935, the petitioner requested by letter the discontinuance of his insurance and the return of 50 per cent of the total assessments paid by him, according to Section 22 of Act No. 52, supra; that the Association, on August 14, 1935, refused such a return or refund on the ground that at that date petitioner was not entitled to any refund, saying, "that an insured person can waive the benefit that he will derive from the insurance, but he is not entitled to the reimbursement of 50 per cent of the premiums paid."

The lower court dismissed the petition principally on the ground that the only time when an insured under Act No. 52 can successfully request and obtain a refund of 50 per cent of the assessments paid, is at the moment of resigning or retiring from office. The court interprets Section 22 of the pertinent act as limiting such a right to the above mentioned case, and inasmuch as in the case before us, the petitioner did not request the discontinuance of insurance and the 50 per cent rebate till more than four years after his retirement, he had lost his right thereto. Incidentally the lower court also intimated that petitioner had lost his right to insurance because of the fact that he had allowed three consecutive assessments to remain unpaid, in violation of Section 21 of the Act.

█ It is clear in our opinion that at the date on which petitioner filed his petition he did not owe three consecutive assessments. The assessments for July and August were due, but that for September had not yet matured because it depended directly on the number of members who should die during that month. The petition was filed on September 24 and, therefore, prior to the assessment for that month. It is true that an amended petition was filed on November 25, 1935, after the court had upheld a demurrer, but the date of the original petition is the one which should govern the rights of the present petitioner.

█ The main and only question, therefore, lies in the interpretation or construction of Sections 21 and 22 of Act No. 52, supra, as amended by Act No. 15 of 1927 (Laws, p. 134). Let us examine them. Section 21 provides:

"Any member entitled to the benefits of this Act who resigns or is separated from office for reason not implying moral turpitude, may continue to enjoy the benefits of insurance on account of death, provided that on ceasing in office he shall notify the Board of Directors of his intention so to do, in which case he shall continue to pay his assessments whenever a death occurs and notice thereof is served upon him; *Provided,* That should he fail to pay three consecutive months when deaths occur, he shall forfeit all his rights to such insurance; *Provided, further,* That any employee on leave of absence without pay, or who is temporarily suspended from office and his salary stopped, shall preserve his rights to the benefit of insurance against death and physical disability during such leave of absence or temporary suspension; *Provided,* That within the first five days of each month he deposits in the office of the Association a sum equal to that which would be deducted from his salary for the purposes of the insurance, as if he had not been on such leave or under such temporary suspension." (Act No. 15 of 1927.)

Section 22 reads:

"Any member not desiring to continue his insurance after his resignation from office, shall so notify the Board of Directors, which shall settle his savings account and reimburse him fifty per cent of

the total assessments paid by him on account of deaths, out of the reserve fund referred to in paragraph 3 of Section 20 of this Act." (Act No. 52 of 1921.)

If one examines the English and Spanish texts of Section 22, *supra*, a discrepancy exists between the words "after his resignation from office" and the corresponding phrase in Spanish, which more literally translated should have read, in English, "on resigning from office." The lower court strictly applied the Spanish text and interpreted it as meaning that if the insured wished to discontinue his protection and obtain a 50 per cent rebate on his paid up assessments, he had to make that election at the time of his cessation in office or employment. Appellant stresses the above discrepancy in the text and insists that any doubt should be resolved in his favor.

We have studied the Sections quoted from every possible angle and have finally come to the conclusion that the judgment should be affirmed.

Nowhere in the act, except in Sections 21 and 22 is there any provision with regard to the privilege, for it is a privilege, of recovering 50 per cent of the assessments paid. The type of insurance set up by the statute is similar to what is known as "group insurance." Under that type of insurance, generally, there is no right to anything except the payment of the policy if at the insured's death he is up to date on his premiums. If he abandons the policy he loses all the rights he may at any time have had to its face value, or any premiums. Under this system, therefore it is a concession to be permitted, even at some definite moment, to discontinue the policy and obtain a 50 per cent refund of the premiums paid. The premiums are ordinarily so low that the protection offered to the insured while he pays those premiums is more than ample consideration for their permanent collection.

With the above in mind, let us look at the letter of Section 22. The Spanish text, in our opinion, should prevail,

for that is the language in which the enactment was introduced into the Legislature. The words which follow the phrase "any member not desiring to continue his insurance" cover only the opinion open to the insured at the moment of his resignation from office. If it is interpreted together with Section 21 it may be concluded that those two sections allow any insured employee, or resigning, one of two courses, i.e. (a) he can continue insured provided he notifies the board of directors of that purpose, on ceasing in office (Section 21), or (b) he may discontinue his insurance and obtain the reimbursement of 50 per cent of the assessments paid, provided he likewise notifies the board on cessation in office, of that choice (Section 22). We are of the opinion that if, as in this case, the resigning employee chooses course (a), the alternative, or course (b), is no longer open to him. If after choosing course (a) the Legislature had intended that he could still enjoy the benefits of course (b) nothing would have been easier than to have expressly referred to that situation in Section 21 itself.

Before resignation or cessation in office, no one who had voluntarily become a member of the Association could withdraw therefrom. It is to be expected, therefore, that on resigning such employee should have a choice as to what to do with regard to his insurance. The statute, however, limits this right to the moment of resignation and requires immediate notice of either choice.

There are perhaps, other arguments in favor of this construction but we think that the ones expressed are sufficient to support the decision of the lower court.

The judgment should, therefore, be affirmed without costs.

Mr. Justice Hutchison and Mr. Justice Córdova Dávila took no part in the decision of this case.